Mr. Hellen, for Mr. Smith, contended, that he was an executive officer of the government of the United States, within the meaning of the second section of the act of the 8th of May, 1792, and therefore exempt from militia duty. Const. U. S. art. 2, § 2, has the expression, "principal officer in each of the executive departments," thereby implying that there may be inferior officers; and by the second clause of the same section, "Congress may, by law, vest the appointment of such inferior officers as they think proper in the president alone, in the courts of law, or in the heads of departments." The act of July 27, 1789, § 3 (1 Stat. 28), requires the principal officer in the department of state, and every person appointed or employed in the department, to be sworn. There is a similar clause in the act of August 7, 1789 (Id. 49), establishing the war department; and in the act of March 3, 1791 (Id. 215), supplemental to the act establishing the treasury department, "each and every clerk and other officer," "shall, before they enter upon the duties of such appointment, take an oath or affirmation, before one of the justices of the supreme court, or one of the judges of a district court of the United States, to support the constitution of the United States, and also an oath or affirmation, well and faithfully to execute the trust committed to him, which oath or affirmation, subscribed by such clerk, and certified by the person administering the same, shall be filed in the office of the person employing such clerk." "Clerk" and "officer" are, in the acts of congress, used as synonymous. Great inconvenience to the government would result from taking away their clerks to do militia duty.

J. Dunlop and Mr. Jones, contra.

Exemptions are odious, and ought to be construed strictly. None are exempted but officers commissioned by the president. There can be no officer without an office, and there can be no office unless created by the constitution or an act of congress. Custom-house officers are expressly exempted, which was unnecessary, if they were officers of the government. Wise v. Withers, 3 Cranch [7 U. S.] 331. By naming custom-house clerks, the legislature meant to exclude all other clerks.

---

## Case No. 12,967a.

### Ex parte SMITH.

### [Hempst. 201.] [1]

Superior Court, Territory of Arkansas. July. 1832.

**MUNICIPAL CORPORATIONS — CRIMINAL JURISDICTION AND COGNIZANCE—POWERS OF MAYOR.**

1. The act incorporating the city of Little Rock delegates no power to punish for offences provided for by the general laws of the country.

2. An ordinance, imposing a fine for an assault, committed in the limits of the city, is void.

3. The mayor may exercise the same powers as to criminal matters as a justice of the peace.

Before JOHNSON, ESKRIDGE, and CROSS, JJ.

OPINION OF THE COURT. The body of John Smith is brought before this court on a writ of habeas corpus, the return of which shows that he is held in custody by the town constable under a warrant issued by the mayor of the town of Little Rock, reciting that "whereas John Smith, on the —— day of July, inst., before me, Mathew Cunningham, mayor of the town of Little Rock, was convicted of having committed an assault on the body of John H. Walker, within the limits of said town, in violation of the ordinances, and fined by me in the sum of thirty dollars, for said offence, and also the costs of

---

[1] [Reported by Samuel H. Hempstead, Esq.]

prosecution, and commanding the said constable to take the said John Smith, if to be found within the town of Little Rock, and unless he shall pay the aforesaid fine and costs, to deliver him to the keeper of the common jail of the county of Pulaski, who is commanded to receive into his custody the said John Smith, and him safely keep until he shall pay said fine of thirty dollars and the costs aforesaid." The motion to discharge involves two questions: First, as to the power delegated to the mayor and town council by the act of incorporation; and second, as to the powers of the mayor unconnected with the council.

By an act, passed at the last session of the legislature, entitled, "An act for the incorporation of the town of Little Rock, and for other purposes," various powers are delegated to the mayor and town council, when organized according to its provisions. They are constituted a legislative body for the town, and may enact ordinances to preserve its health, to remove nuisances, provide nightwatches, erect market houses, make such bylaws as they may deem proper for the suppression of vice and immorality, and enforce the same, and do all such matters and things for the well-being and good police of said town, as are not inconsistent with existing laws. These are the principal powers given to the mayor and town council in their legislative capacity, none of which expressly authorize the making of ordinances or by-laws on the subject of assaults. If such a power be given at all, it is by implication. The power to make by-laws for the suppression of vice and immorality, as well as that to do all things necessary for the well-being and good police of the town, would seem to embrace almost every species of crime; but no one would contend that the mayor and town council could, under these general grants of power, make ordinances and by-laws on the subject of murder, or other felonies. The most rational construction, then, to be given to terms so indefinite and apparently comprehensive is, that the legislature intended to confer no power to make ordinances and by-laws in relation to matters already provided for by the general laws of the country. It may be said, that if the mayor and town be thus restricted in their sphere of action as a legislative body, the object of incorporation will never be attained. This, however, would be an unjust conclusion, as ample power is given, although not to the mayor and town council, in the exercise of which, offences of every grade may receive their appropriate punishments.

Is it to be found in the enumeration of powers delegated to the mayor, unconnected with the council, which will now be considered, and forms the second question involved in the motion to discharge? The moment the mayor is regularly installed into office, he is declared, by the act of incorporation, to be a conservator of the peace, and not only empowered, but actually required to do and execute all such matters and things within the limits of the town, as justices of the peace for the territory may and can lawfully do. In an examination, therefore, of his powers and duties, it would be necessary to ascertain those of a justice of the peace, as regulated and defined by the laws of the territory. Acting in that character, he might issue a warrant, upon proper information, for the arrest of any person charged with felony, and upon examination bind over for further trial, or commit to prison. In case of assault and battery, or breach of the peace in his presence, or upon the oath of a creditable person, he can cause the offender to be brought before him, and upon confession or the verdict of guilty, by a jury of twelve men, impose a fine of not less than five nor more than twenty dollars. He may cause recognizances to be entered into in certain cases for keeping the peace, and issue warrants for the apprehension of vagrants. The duty is likewise imposed upon him to execute the laws and ordinances of the council, and see that they be faithfully observed.

Entertaining the opinion, that no power has been delegated to the mayor and town council in their legislative capacity to make ordinances and by-laws on the subject of offences, for the punishment of which the general laws of the country provide, it follows that the ordinance imposing a fine of thirty dollars for an assault is void, and that Smith, who has been fined and committed for its violation, is improperly in custody. The imprisonment would have been equally unauthorized, if the mayor had acted in the matter as a justice of the peace, there being no power given in such cases to impose a fine of thirty dollars. The prisoner, therefore, must be discharged.

Discharged accordingly.